IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No. 3:24-cr-58 |
| | ) | |
| Plaintiff, | ) | |
| | ) | **DEFENDANT'S MOTION TO** |
| v. | ) | **SUPPRESS EVIDENCE AND** |
| | ) | **MEMORANDUM OF LAW** |
| MAURICE HAYMON, JR., | ) | **IN SUPPORT OF MOTION** |
| | ) | |
| Defendant. | ) | |

## MOTIONS

**1.     First Motion.**  Defendant Maurice Haymon, Jr., moves this Honorable Court to suppress all evidence obtained from the Order dated November 7, 2023, signed by Judge Nicholas Chase, District Court Judge, Cass County, North Dakota, for the installation and use of a pen register and trap and trace device, including Global Positioning System (GPS) technology, for the cellular telephone number (561) 897-7542, being that of Defendant Maurice Haymon, Jr.

**2.     Second Motion.**  Defendant furthermore moves this Honorable Court to suppress all evidence obtained from the Search Warrant dated November 8, 2023, signed by Judge Susan Bailey, District Court Judge, Cass County, North Dakota, whereby the Court authorized the placement of a GPS device on the exterior of a 2014 Dodge Durango motor vehicle being utilized by Defendant Maurice Haymon, Jr.

**3.     Third Motion.**  Defendant furthermore moves this Honorable Court to suppress all evidence obtained from the search of the 2014 Dodge Durango motor vehicle he was driving on November 24, 2023, on the basis that Defendant was unlawfully stopped, detained, and arrested.  This would include any controlled

1

substances and cellular phones found in the vehicle.

## FACTUAL BACKGROUND

### 1. Phone GPS

On November 7, 2023, Detective Kyle Hinrichs of the West Fargo Police Department submitted an Affidavit in support of a Search Warrant for the installation and use of a pen register and trap and trace device, including Global Positioning System (GPS) technology, for the cellular telephone number (561) 897-7542, being that of Defendant Maurice Haymon, Jr.  (Hereinafter "Phone GPS.")  See **Exhibit A**, Bates 4268-75.

That same day, Nicholas Chase, District Court Judge, Cass County, North Dakota, granted such a Search Warrant.  See **Exhibit B**, Bates 4260-83.

### 2. Durango GPS

On November 8, 2023, Detective Kyle Hinrichs of the West Fargo Police Department submitted an Affidavit in support of a GPS device on the exterior of a 2014 Dodge Durango motor vehicle being utilized by Defendant Maurice Haymon, Jr. (Hereinafter "Durango GPS.")  See **Exhibit C**, Bates 4037-46.

That same day, Susan Bailey, District Court Judge, Cass County, North Dakota, signed such a Search Warrant.  See **Exhibit D**, Bates 188-90.

### 3. Search of the Durango

On November 23, 2023, TFO Kyle Hinrichs with the Cass County Drug Task Force began monitoring the GPS location of both the alleged phone number of Defendant and the Dodge Durango believed to being operated by Defendant.  (Bates

295.)  TFO Hinrichs noticed that the GPS devices showed Defendant having left Fargo, North Dakota, on November 23, 2023, and arriving in Brooklyn Park, Minnesota, at 8:38 p.m. that evening.  (Bates 295-6.)

On November 24, 2023, TFO Hinrichs' continued monitoring of both GPS units showed that Defendant had left Brooklyn Park at 8:06 p.m. and was driving westbound on Interstate 94.  (Bates 296.)  TFO Hinrichs positioned himself at the Downer, Minnesota, on-ramp at 10:30 p.m.  At 10:54 p.m., TFO Hinrichs observed the 2014 Dodge Durango drive by, going west on Interstate 94.  TFO Hinrichs followed the Durango into North Dakota, at which point he passed it and observed the driver to match the description of Defendant.  He also noticed the Durango had tinted front windows and windshield.  TFO Hinrichs relayed this information to North Dakota State Trooper Gabriel Irvis.

Once the Durango entered North Dakota, Trooper Irvis noted it was traveling above the posted speed limit, and so he conducted a traffic stop near the 25th Street South off-ramp in Fargo at approximately 11:08 p.m. (Id.)

Trooper Irvis approached the Durango and told Defendant he would receive a couple of warnings and then he would get Defendant out of here.[1]  Even after Defendant explained that he did not have a driver's license, Trooper Irvis indicated he would give Defendant a $20 ticket and that after Defendant came back to the squad car, he would have him out of there.

Once both were in the squad car, Defendant's cell phone continued on speaker

---

[1] At the suppression motion hearing, Defendant will be introducing into evidence the body-cam video and a transcript of the body-cam video.

3

phone while he conversed with his wife about their child not feeling well. After about 7 minutes from the approximate time of the stop, Trooper Irvis asked Defendant to hang up so that the Trooper could get him out of there. Defendant complied.

Trooper Irvis detained Defendant in the front seat of his squad car for approximately 7 minutes before printing a ticket, which he handed to Defendant.

After another 1.5 to 2 minutes, the Trooper got out of his squad car, came around to the passenger side door, and told Defendant he was going to detain him while he (the Trooper) searched the car. When Defendant asked, "For what?", the Trooper responded that "the vehicle smells like weed." The Trooper then put Defendant in handcuffs and had him get out of the squad car to get into the back seat of his partner's car. Trooper Irvis then said he doesn't care about the weed and this will not take long.

Trooper Irvis proceeded to search the Durango. According to his report, he found a meth pipe with residue, several suspected ecstasy pills, a small amount of marijuana, a small plastic jar containing a yellowish liquid of suspected PCP, and two cell phones.

In Trooper Irvis' search of the back seat and a third row seat, he found several large bags containing clothing. He dumped the clothing out of each bag. Wrapped up in the clothing from one of the bags were two large vacuum sealed bags containing a large amount of M-30 Fentanyl pills. The total weight was four pounds and 11 ounces.

### Arrest

Based on the foregoing search, Defendant was charged with several felony drug offenses in Cass County, North Dakota. Those charges were dismissed upon

Defendant being indicted in this case.

Defendant now moves for suppression of the evidence obtained via the cell phone GPS warrant, the Durango GPS warrant, and the search of the Durango, as well as all evidence obtained from using that evidence.

## ISSUES

1. **Was there sufficient probable cause for the issuance of a Search Warrant for the Phone GPS?**

2. **Was there sufficient probable cause for the issuance of a Search Warrant for the Durango GPS?**

3. **Was there sufficient probable cause for the search of the Durango?**

## ARGUMENT

1. **There was insufficient probable cause for the issuance of a Search Warrant for the Phone GPS.**

It is well established that law enforcement needs a warrant based on probable cause to access phone location records. Carpenter v. United States, 138 S.Ct. 2206, 2221 (2018); United States v. Thompson, 976 F.3d 815, 822 (8th Cir. 2020). Probable cause exists when, "under the totality of the circumstances, there is a fair probability that evidence of a crime will be found in a particular place." United States v. Petruk, 929 F.3d 952, 959 (8th Cir. 2019). Furthermore, there must be evidence of a nexus between the contraband and the place to be searched before a warrant may properly issue. Id. at 961.

In the Search Warrant Application for the phone GPS, there is no nexus between Defendant's phone location and controlled substances. In the entire 8 page, single spaced Search Warrant Application (Exhibit A), Defendant's phone number is

5

mentioned only 3 times:

1. Bates 4270, 5th line down.  Confidential Informant 23-2264 gave information on Defendant traveling to Minneapolis with Kelly Dionne in order to obtain large quantities of Fentanyl-laced M30 pills.  The confidential informant provided TFA Seehusen with Haymon's cellular phone number, which is (561) 897-7542.

2. Bates 4273, bottom.  TFO Cichos recently arrested an individual on narcotic related charges.  That individual identified their source of Fentanyl-laced M30 pill and powder Fentanyl as Maurice Haymon.  Through the investigation, TFO Cichos identified Haymon's cellular phone number as (561) 897-7542.

3. Bates 4274, 2nd full paragraph.  On November 7, 2023, TFO Seehusen contacted CI 23-2264 and reconfirmed that Maurice Haymon's cellular phone number is (561) 897-7542.

None of the three above instances provide a nexus between the location of Defendant's cellular phone and controlled substances.  In the first instance, CI 23-2264 gave information on Haymon going to Minneapolis and gave TFA the phone number to Haymon's cell phone.  Nothing indicates that Haymon used his cell phone while making such a trip or, for that matter, that he even brought it with.

In the second instance, the officer investigating a narcotics charge learns Haymon's cell phone number.  Again, no nexus of any kind is mentioned.

Finally, CI 23-2264 reconfirms Haymon's cell phone number.

An examination of the other portions of the Search Warrant Application provides

no other mention of Haymon using his cell phone or of Haymon taking his cell phone with him on trips. Nowhere in the Application is there any statement or evidence that Haymon was ever in possession of his cell phone.

The reason there is absolutely no nexus between Haymon's cell phone location and any narcotics he is alleged to have distributed can be found in one of the last paragraphs of the Application, which states:

> Based on your Declarant's investigation, your Declarant does not believe Maurice Haymon will be driving the Ford F-150 to obtain the narcotics and will be traveling in a different and unknown vehicle.

Exhibit A, Bates 4274, Par. 3.

What happened here is that law enforcement previously did a Search Warrant Application for the Ford F-150. See **Exhibit E**. That Application is dated October 30, 2023, and resulted in law enforcement obtaining a GPS search warrant for the Ford F-150. However, as noted in the language cited above at the end of the GPS Search Warrant Application for Haymon's phone, it was believed that Haymon was no longer driving the Ford F-150. So in order to continue tracking Haymon's location, law enforcement submitted the nearly identical application for a GPS warrant on Haymon's cell phone as they had done for the Ford F-150. Unfortunately for law enforcement, no statements were made anywhere in the GPS phone application that Haymon's cell phone location had any nexus to any drugs he was supposedly trafficking. Thus Exhibit E discusses at length Haymon's use of the Ford 150 to distribute controlled substances, and at Bates 4052 on Exhibit E, the second last paragraph, the officer provides a concluding statement that Haymon was using the Ford F-150 to obtain and

7

distribute controlled substances. All of that is lacking in the Application for the GPS cell phone (Exhibit A), and therefore the warrant is not supported by probable cause. That being the case, any evidence obtained as a result of the GPS phone search warrant should be suppressed.

### 2. There was insufficient probable cause for the issuance of a Search Warrant for the Durango GPS.

As noted in United States v. Petruk, supra, the affidavit supporting the GPS warrant application for the Durango in this case must provide probable cause to believe that Haymon was involved in drug trafficking and that the location data from his Durango would lead to evidence of that trafficking. Id. at 959.

The GPS warrant application in this case – Exhibit C – mirrors nearly word-for-word the GPS warrant applications submitted (a) on October 30, 2023, for the Ford F-150 (see Exhibit E) and (b) on November 7, 2023, for the cell phone (see Exhibit A). That is, all three warrant applications – Exhibits A, C, and E - focus on Haymon's use of the Ford F-150 in conjunction with his alleged drug distribution activity.

Significantly, the Durango application is dated November 8, 2023, being one day later than the cell phone application and 9 days after the Ford F-150 application. Also significant is that the Durango application is based on additional facts that do not support the issuance of the Durango GPS warrant:

1. After the cell phone GPS warrant was issued on November 7, 2023, TFO Hinrichs utilized the cell phone GPS to monitor Haymon's location. TFO Hinrichs learned that on November 7, 2023, Haymon left Fargo, North Dakota; arrived in Minneapolis/St. Paul, Minnesota, later that day; and left

8

Minneapolis/St. Paul for Fargo much later that day. If the cell phone GPS warrant is invalid, then these additional facts should not be considered under the fruit of the poisonous tree doctrine.

2. Haymon was stopped by the North Dakota Highway Patrol in a Dodge Durango with no license plates. (No date is given.) Pictures from the traffic stop showed the Dodge Durango to be identical to the one noted in paragraphs 3 and 4 below.

3. On November 8, 2023, TFO Hinrich continued to monitor Hayman via the cell phone GPS and used that monitoring to locate Haymon in a parking lot in Fargo. Haymon was observed in a Dodge Durango with no license plates. Again, because this evidence was derived from the use of the illegally obtained cell phone GPS, it should not be considered.

4. Additional monitoring of Haymon's cell phone location on November 8, 2023, resulted in TFO Hinrich observe the Dodge Durango in a different parking lot with Haymon being the sole occupant. Once again, because this evidence was derived from the use of the illegally obtained cell phone GPS, it should not be considered.

The Search Warrant Application for the Durango GPS concludes with a statement that TFO Hinrich believes Haymon is using the Durango to travel to and from unknown locations in the area to obtain and distribute Fentanyl-laced M30 pills and powder Fentanyl.

It is Defendant's position that if the cell phone GPS warrant, as argued above,

9

was obtained without sufficient probable cause, then the only evidence remaining in the Durango GPS search warrant application that should be considered and which pertains to the Durango is that Haymon was stopped by the North Dakota Highway Patrol in a Dodge Durango with no license plates. This alone does not establish that Haymon was utilizing the Durango for illegal drug trafficking. For that reason, the GPS search warrant issued for the Dodge Durango lacked probable cause, and any evidence obtained from the execution of that warrant should be suppressed.

### 3. There was insufficient probable cause for the search of the Durango.

Trooper Irvis has indicated he stopped the Durango for speeding and tinted windows. If those facts are sufficiently supported at an evidentiary hearing, then the United States has established there was reasonable suspicion to stop the Durango.

Once the Durango was stopped, Trooper Irvis approached the Durango and knocked on the passenger window. A conversation ensued between Trooper Irvis and Mr. Haymon in the squad car front seat. Trooper Irvis was wearing a body-cam, so that video will be presented as evidence at the suppression motion hearing. (See D02, 4345, of discovery.) Throughout that conversation, Trooper Irvis repeatedly told Haymon that he would issue him a warning or a $20 ticket and get him on his way, even though Haymon's driver's license was suspended. The Trooper asked Haymon about where he had been, where he was going, and his employment. After handing Haymon the ticket, the Trooper asked if there were drugs in the vehicle and whether he could search the vehicle; Haymon said "no" to both questions. The Trooper then got out of his squad car, came around to the passenger door, and put handcuffs on Haymon.

The Trooper indicated he had probable cause to search the car because it smelled like weed. This occured approximately 11 to 12 minutes after the stop and is the first time the Trooper ever indicated he smelled marijuana in the vehicle.

"We have repeatedly held that the odor of marijuana provides probable cause for a warrantless search of a vehicle under the automobile exception." United States v. Williams, 955 F.3d 734 (8th Cir. 2020).

However, whether there actually was an odor of burnt marijuana in the vehicle is a factual dispute that can only be resolved through an evidentiary hearing. If the Court determines at that hearing that the United States has not met its burden of proving there was an odor of burnt marijuana in the vehicle, then there is no probable cause for the search and the evidence found in the vehicle must be suppressed.

## CONCLUSION

All evidence obtained from the two GPS Search Warrants and the search of the Durango should be **SUPPRESSED**.

Dated this 20th day of June, 2025.

Mark A. Meyer
Attorney for Defendant
ND Atty. Reg. No. 04966
205 North 7th Street
P.O. Box 216
Wahpeton, ND 58074-0216
(701) 642-1660
(701) 642-2061 (fax)
markameyer@702com.net

11

## CERTIFICATE OF SERVICE

Mark A. Meyer, Attorney for Defendant Maurice Haymon, Jr., hereby certifies that on June 20th, 2025, the following document:

1. Defendant's Motion to Suppress Evidence and Memorandum of Law in Support of Motion

was served upon:

Dawn M. Deitz
Assistant U.S. Attorney
dawn.dietz@usdoj.gov

by filing electronically.

_____
Mark A. Meyer
Attorney for Defendant