IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MAURICE HAYMON, JR.,<br><br>Defendant. | Case No. 3:24-cr-00058<br><br>**UNITED STATES' POST-HEARING BRIEF** |

The United States of America, by Jennifer Klemetsrud Puhl, Acting United States Attorney for the District of North Dakota, and Dawn M. Deitz, Assistant United States Attorney, hereby files its Post-Hearing Brief following the evidentiary hearing held on June 4, 2025 (Doc. 335 *SEALED*). Respectfully, the United States requests this Court deny Haymon's motion to suppress the evidence. (See, Doc. 315.)

### I.   Introduction

On or about April 18, 2024, a federal grand jury indicted Haymon with one count of Conspiracy to Possess with Intent to Distribute and Distribute Controlled Substances, in violation of 21 U.S.C. §§ 846 and 841; one count of Money Laundering Conspiracy, in violation of 18 U.S.C. § 1956; and one count of Possession with Intent to Distribute a Controlled Substance (Fentanyl), in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2. (Doc. 4.)

A jury trial is currently set for February 24, 2026. (Doc. 358.)

During the investigation of this case, investigators were granted four separate state search warrants (Docs. 315-1 through 315-5). In Haymon's Motion to Suppress the

Evidence (Doc. 315), he only challenges one search warrant – the GPS tracker search warrant (Doc. 80-1), which was the first search warrant granted in this case. Haymon essentially argues a lack of nexus between his phone and drug trafficking activity for issuance of the GPS search warrant. Haymon further argued that if the GPS search warrant was invalid, all subsequent warrants were invalid as information from the GPS was obtained and provided during the subsequent warrants' applications.

In response to Haymon's motion (Doc. 315), the United States filed its response in opposition (Doc. 321). In the United States' brief, it argued that it is a known fact that cell phones are often tools of the drug trade. See United States v. Hernandez-Mendoza, 600 F.3d 971, 977 (8th Cir. 2010) ("[D]rug traffickers typically carry multiple cell phones to allow for the disposal of one or more, if necessary to avoid detection."); United States v. Lazcano-Villalobos, 175 F.3d 838, 844 (10th Cir. 1999) ("[C]ellular telephones are recognized tools of the drug-dealing trade."); United States v. De La Cruz, 996 F.2d 1307, 1311 (1st Cir. 1993) (describing cell phones as "well known tools of the drug trade"); United States v. Lisbon, 835 F. Supp. 2d 1329, 1363 (N.D. Ga. 2001) (concluding that cell phones found in plain view were properly seized without a warrant because "cell phones are 'a known tool of the drug trade'") (quoting United States v. Nixon, 918 F.2d 895, 900 (11th Cir. 1990); United States v. Santillan, 571 F. Supp. 2d 1093, 1100–01 (D. Ariz. 2008) ("[C]ell phones and pagers in drug-trafficking investigations may come within the plain view exception to the warrant requirement as items akin to contraband, in that they are often tools of the drug-trafficking trade."). Thus, the issuing magistrate judge could make reasonable inferences

regarding the use of cellular phones and an individual providing information regarding their drug trafficking source including the source's phone number that the individual contacted the source via cellular phone for controlled substances. (Doc. 315.) Thus, the GPS warrant (and all subsequent warrants) were valid within their four corners.

An evidentiary hearing was held on August 13, 2025. (Doc. 335 *SEALED*.) At the evidentiary hearing, the United States called two witnesses, North Dakota Highway Patrol Trooper Gabriel Irvis and West Fargo Police Department Investigator and USPIS Task Force Officer Kyle Hinrichs. (Id.) The United States did not offer any exhibits at the evidentiary hearing. Rather, the United States relied on the exhibits (Docs. 80-1 through 80-5 and 321-1 through 321-5) filed with Haymon's motion and the United States' response. Haymon testified at the suppression hearing but declined to answer much of the questions posed on cross examination.

After the evidentiary hearing, the Court ordered the parties to file post-hearing briefs. (Doc. 335 *SEALED*.)

## II. Law and Argument

### a. Traffic Stop

Assuming, *arguendo*, that the GPS search warrant was deficient, the evidence found in Haymon's vehicle should not be suppressed. See United States v. Olivera-Mendez, 484 F.3d 505, 511 (8th Cir. 2007) (holding "[e]vidence should not be excluded from trial based on a constitutional violation unless the illegality is at least a but-for cause of obtaining the evidence.") Here, Haymon was pulled over by a North Dakota state trooper for a traffic violation, namely speeding. See United States v. Lyons, 486 F.3d

3

367, 371 (8th Cir. 2007) (holding "a traffic violation—however minor—creates probable cause to stop the driver of a vehicle."); United States v. Gordon, 741 F.3d 872, 876 (8th Cir. 2013) (stating probable cause for a traffic stop exists "[a]s long as an officer objectively has a reasonable basis for believing that the driver has breached a traffic law."); United States v. Frasher, 632 F.3d 450, 453 (8th Cir. 2011) (quoting United States v. Arciniega, 569 F.3d 394, 397 (8th Cir. 2009) ("Once an officer has probable cause, the stop is objectively reasonable and any ulterior motivation on the officer's part is irrelevant.... [I]t is irrelevant that the officer would have ignored the violation but for his ulterior motive.").

During the traffic stop, while speaking with Haymon, the sole occupant and driver of the vehicle, the trooper could smell an odor of burnt marijuana coming from the vehicle. Based on the smell of marijuana, a probable cause search was conducted of Haymon's vehicle. See United States v. Williams, 955 F.3d 734, 737 (8th Cir. 2020) ("We have repeatedly held that the odor of marijuana provides probable cause for a warrantless search of a vehicle under the automobile exception.") During a search of Haymon's vehicle, law enforcement found controlled substances including approximately four pounds of M30 fentanyl-laced pills.

TFO Hinrichs would later arrive on scene and also observe the odor of burnt marijuana. TFO Hinrichs would then take custody of the controlled substances.

1. **Good Faith Exception**

Assuming, for the sake of argument, that the GPS warrant (Doc. 315-1) was invalid, the good-faith exception precludes suppression of the evidence. "The ordinary

sanction for police violation of Fourth Amendment limitations has long been suppression of the evidentiary fruits of the transgression." United States v. Fiorito, 640 F.3d 338, 345 (8th Cir. 2011) (citations omitted). The rationale behind the good-faith exception to the exclusionary rule is that no justification exists to exclude evidence "when an officer acting with objective good faith has obtained a search warrant from a judge ... and acted within its scope." United States v. Leon, 468 U.S. 897, 920 (1984).

> In the ordinary case, an officer cannot be expected to question the [judge's] probable-cause determination or his judgment that the form of the warrant is technically sufficient. "[O]nce the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law." ... Penalizing the officer for the [judg]e's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations.

Id. at 921 (quoting Stone v. Powell, 428 U.S. 465, 498 (1976)). "Under the Leon good-faith exception, disputed evidence will be admitted if it was objectively reasonable for the officer executing a search warrant to have relied in good faith on the judge's determination that there was probable cause to issue the warrant." United States v. Mayweather, 993 F.3d 1035, 1041 (8th Cir. 2021) (citation omitted). "The good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the issuing judge's authorization." United States v. Williams, 976 F.3d 807, 809 (8th Cir. 2020) (citation omitted).

Leon identified four circumstances in which an officer's reliance on a warrant is not in objective good faith:

> (1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for

> its truth, thus misleading the issuing judge; (2) when the issuing judge wholly abandoned his judicial role in issuing the warrant; (3) when the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) when the warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid.

United States v. Perry, 531 F.3d 662, 665 (8th Cir. 2008) (quoting United States v. Proell, 485 F.3d 427, 431 (8th Cir. 2007)).

In Schermerhorn, the defendant challenged a search warrant authorizing the installation of a GPS tracking device on a vehicle. United States v. Schermerhorn, 71 F. Supp. 3d 948, 951 (E.D. Mo. 2014). The defendant argued that the affidavit used to secure the warrant "contained misleading facts and omitted crucial facts." Id. The district court found that the search warrant was not supported by probable cause. Id. at 956 ("The only information the Affidavit and Application revealed about the car for which the GPS Warrant was sought is who the car was registered to and that a white male drove the car on October 31, 2013.")

However, citing the good-faith exception, the district court did not suppress the evidence. Id. at 961. Although the district court did not find that the affiant "used deliberately or recklessly false statements to demonstrate probable cause," the court did find that the affidavit was not facially sufficient. Id. at 958. Therefore, the court held that the first exception to applying the good faith rule was not applicable. Id.

The district court found that the GPS warrant should be upheld under the good-faith exception because the "[affiant/officer's] knowledge of [the defendant's] involvement [in the case], together with the information contained in his Affidavit, [was]

6

sufficient to establish [the affiant/officer's] reasonable reliance on the issuing judge's determination of probable cause." Id. at 961.

Here, TFO Hinrichs's affidavit supporting the warrant did not contain a false statement made knowingly and intentionally or with reckless disregard for its truth. Nothing in Hinrich's affidavit was false. Like in Schermerhorn, TFO Hinrichs reasonably and in good-faith, relied on the GPS search warrant. Hinrichs's affidavit provided extensive information obtained from informants, cooperating individuals, and law enforcement observations. (Doc. 315-1.) Here, there was no reason for Hinrichs, a "reasonably well-trained officer" to "have known that the search was illegal despite the issuing judge's authorization." It was objectively reasonable, based on Hinrichs's observations, to rely on the GPS search warrant as being valid. Gossen, reasonably and in good faith, relied on the GPS search warrant as he monitored Haymon's location using the GPS data. Therefore, even if this Court finds that the GPS warrant lacked probable cause, should not suppress any evidence following therefrom.

## 2.    Independent Source Doctrine

Assuming, *arguendo*, that the GPS warrant was unsupported by probably cause, no evidence should be suppressed in this case. "Under the 'fruit of the poisonous tree' doctrine, the exclusionary rule bars the admission of physical evidence and live witness testimony obtained directly or indirectly through the exploitation of police illegality." United States v. Simpson, 439 F.3d 490, 493–94 (8th Cir. 2006) (quoting Hamilton v. Nix, 809 F.2d 463, 465 (8th Cir. 1987) (citing Wong Sun v. United States, 371 U.S. 471, 484–88 (1963)). "The independent source doctrine allows admission of evidence initially

7

discovered during, or as a consequence of, an unlawful search, but later obtained independently from activities untainted by the initial illegality." United States v. Green, 39 F.4th 510, 513 (8th Cir. 2022) (citation omitted).

In Barraza–Maldonado II, the defendant moved to suppress all of the evidence obtained as a result of law enforcement's warrantless installation of a GPS tracking device on his vehicle. United States v. Barraza-Maldonado, 879 F. Supp. 2d 1022, 1024 (D. Minn. 2012), aff'd, 732 F.3d 865 (8th Cir. 2013) (Barraza-Maldonado II). With the GPS device affixed to the defendant's vehicle, DEA agents requested a state trooper's assistance with apprehending the defendant's vehicle. United States v. Barraza-Maldonado, No. CRIM. 12-54 PJS/SER, 2012 WL 2952357, at *2 (D. Minn. May 11, 2012) (Barraza-Maldonado I), report and recommendation adopted in part, rejected in part, 879 F. Supp. 2d 1022 (D. Minn. 2012), aff'd, 732 F.3d 865 (8th Cir. 2013). The trooper conducted a traffic stop on the defendant's vehicle for tinted windows and failure to use headlights. Barraza-Maldonado I, 2012 WL 2952357, at *2.

During the traffic stop, the trooper conducted an initial roadside search of the vehicle. Barraza-Maldonado II, 879 F. Supp. 2d at 1032. Because the defendant did not have a valid driver's license, and because the head lights did not work, the troopers had the vehicle towed. Barraza-Maldonado I, 2012 WL 2952357, at *3. Prior to the vehicle being towed, troopers searched the vehicle, pursuant to an inventory search. Barraza-Maldonado II, 879 F. Supp. 2d at 1033. The district court determined that the roadside warrantless inventory search was unlawful, in violation of the Fourth Amendment. Id. The troopers did not find any contraband during the initial inventory search. Id. at 1034.

8

Within minutes of completing the initial roadside search, troopers used a drug detection K-9 to sniff the exterior of the vehicle. Id. The K-9 alerted to the presence of illegal drugs. Id.

After the initial roadside search of the vehicle, the defendant signed a consent to search the vehicle. Id. at 1025. Officers performed a warrantless second search of the vehicle at a garage. Id. at 1032. During the second search at the garage, officers found 16 kilograms of cocaine in the vehicle. Id. at 1034. However, the district court found that the consent was not voluntary. Id. at 1025. Nonetheless, the court found that the officers had probable cause to conduct the second search of the vehicle because of "an independent and lawful source—namely, the drug-detection dog's alert, which provided probable cause to justify a warrantless search under the automobile exception." Id.

Here, the approximately four pounds of M30 fentanyl pills found in Haymon's vehicle were discovered as a result of a lawful traffic stop. The traffic stop was based on a traffic violation observed by state troopers, namely speeding and window tint. See United States v. Lyons, 486 F.3d 367, 371 (8th Cir. 2007) (holding "a traffic violation—however minor—creates probable cause to stop the driver of a vehicle.") During the traffic stop, Trooper Irvis (and later TFO Hinrichs) could smell the odor of marijuana emitting from Haymon's vehicle. See United States v. Williams, 955 F.3d 734, 737 (8th Cir. 2020) (holding "We have repeatedly held that the odor of marijuana provides probable cause for a warrantless search of a vehicle under the automobile exception.") Trooper Irvis searched Haymon's vehicle and found numerous controlled substances. The

9

trooper smelling the odor of marijuana is an independent source allowing the lawful search of Haymon's vehicle.

### 4.     Attenuation Doctrine

Again, assuming that the GPS warrant lacked probable cause, under the attenuation doctrine, no evidence in this case should be suppressed. Under the attenuation doctrine, "[e]vidence is admissible when the connection between unconstitutional police conduct and the evidence is remote or has been interrupted by some intervening circumstance, so that the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained." United States v. Forjan, 66 F.4th 739, 748 (8th Cir. 2023) (quoting Utah v. Strieff, 579 U.S. 232, 238 (2016). "The attenuation doctrine evaluates the causal link between the government's unlawful act and the discovery of evidence, which often has nothing to do with a defendant's actions." Strieff, 579 U.S. at 238. There are three factors in determining whether the attenuation doctrine applies: "first, we look to the 'temporal proximity' between the unconstitutional conduct and the discovery of evidence to determine how closely the discovery of evidence followed the unconstitutional search. Second, we consider 'the presence of intervening circumstances.' Third, and 'particularly' significant, we examine 'the purpose and flagrancy of the official misconduct.'" Id. at 239 (citation omitted).

In Forjan, an officer conducted a traffic stop without reasonable suspicion or probable cause to make the stop. Forjan, 66 F.4th at 748. During the traffic stop, the officer learned that the defendant did not have a valid driver's license. Id. at 744. While

writing citations for the expired license and not having proof of insurance, a drug detection K-9 sniffed the exterior of the vehicle. Id. at 745. The K-9 alerted to a pack of cigarettes removed from the defendant's pocket during a pat down search. Id. The defendant admitted that marijuana might be in the vehicle. Id. During a search of the vehicle, the officer found six pounds of methamphetamine. Id.

After the district court denied the defendant's motion to suppress the methamphetamine, the defendant entered a conditional guilty plea. Id. at 743. On appeal, the defendant argued that the district court erred in denying his motion to suppress. Id. at 746. In affirming the conviction, citing the attenuation doctrine, the Eighth Circuit held "[c]onsidering the [three Strieff] factors together, the unlawful stop was sufficiently attenuated in this case by the discovery of [the defendant's] expired license and lack of insurance. Id. at 750. The court held that the first factor, the 'temporal proximity' between the unconstitutional conduct and the discovery of evidence, weighed in favor of suppression because the time between the traffic stop unsupported by reasonable suspicion and the discovery of the methamphetamine was brief. Id. at 748.

The court called the second factor, the presence of intervening circumstances, the "closest call" but found this factor weighed in favor of attenuation. Id. at 749. In Forjan, the intervening circumstances were the officer's discovery that the defendant did not have a valid driver's license or proof of insurance. Id. The court held that the defendant's invalid license and lack of insurance, while discovered through the course of the stop, were wholly unconnected to the purposes of the stop. Id. Thus, the court found that the

11

invalid driver's license broke the causal chain between the unlawful stop and the discovery of methamphetamine. Id.

The court found the third factor, the purpose and flagrancy of the official misconduct, favored attenuation. Id. The court found that while the officer's mistaken belief that the defendant's vehicle tag was expired was not reasonable, it was a good-faith mistake. Id.

In the case at hand, pursuant to the attenuation doctrine, no evidence should be suppressed. Here, the temporal proximity between the alleged unconstitutional conduct and the discovery of evidence was not brief. The alleged unconstitutional conduct, i.e., obtaining the GPS search warrant, occurred on November 7, 2023. The traffic-stop on Haymon's vehicle occurred on November 24, 2023. The search of Haymon's vehicle, when approximately four pounds of pills were found that same day during the course of the traffic stop. A seventeen-day difference between the GPS search warrant and the finding of the pills in Haymon's vehicle favors attenuation.

The second factor, the presence of intervening circumstances, favors attenuation. Here, the intervening circumstances include:

- A lawful traffic-stop of Haymon's vehicle;
- Law enforcement smelling marijuana emitting from the vehicle;
- Officers finding controlled substances in the vehicle; and
- Haymon's conduct during the stop, including phone calls which law enforcement believed to be a rouse.

Finally, the third factor, the purpose and flagrancy of the official misconduct, i.e. the GPS warrant, favors attenuation. Assuming that the GPS warrant was not supported by probable cause, any mistake was made in good faith. Nothing in the GPS warrant affidavit is untrue. While the affiant did not point blank state the individual providing information contacted Haymon at the number to obtain controlled substances, it was a favor inferred based upon cellular telephones being recognized tools of the drug-dealing trade.

### b. Haymon's Testimony

At the suppression hearing, Haymon's counsel advised him not to answer certain questions on cross, mostly related to Haymon's alleged criminal activity as well as his truthfulness to law enforcement. The United States requested Haymon's testimony be stricken in its entirety.

A trial court's decision to strike a witness's testimony after the witness's assertion of the Fifth Amendment privilege against self-incrimination is reviewed for an abuse of discretion, and "only in a case of abuse of such discretion resulting in obvious prejudice should an appellate court intervene." United States v. Brierly, 501 F.2d 1024, 1027 (8th Cir. 1974). The trial court has the duty to "exercise reasonable control over the mode ... of examining witnesses and presenting evidence so as to [ ] make those procedures effective for determining the truth." Fed. R. Evid. 611(a)(1). To provide a trial with a fair truth-seeking process, testimony should be stricken when its truth cannot be tested. See Smith v. United States, 331 F.2d 265, 277 (8th Cir. 1964). Direct testimony may remain on the record, even though the witness asserts the privilege against self-incrimination on

cross-examination, if the Fifth Amendment is invoked on cross-examination as to the collateral matters rather than the details of the direct testimony. <u>United States v. Wilkens</u>, 742 F.3d 354, 360 (8th Cir. 2014).

The questions posed of Haymon during cross examination were not collateral matters, rather the questions posed went directly to Haymon's credibility to demonstrate his ongoing dishonesty. (<u>See</u>, Doc. 321-4 and 321-5.) Court proceedings, including cross examination, are designed to "promote the development of evidence law, to the end of ascertaining the truth and securing a just determination." Fed. R. Evid. 102. Haymon's counsel asserting the Fifth Amendment and declining to answer questions strikes against this development of ascertaining the truth. Thus, Haymon's testimony should be stricken.

## Conclusion

For the foregoing reasons, the United States requests this Court deny Haymon's motion in its entirety.

Dated: October 9, 2025

                                          JENNIFER KLEMETSRUD PUHL
                                          Acting United States Attorney

By:   /s/ *Dawn M. Deitz*
       DAWN M. DEITZ
       Assistant United States Attorney
       ND Bar ID 06534
       655 First Avenue North, Suite 250
       Fargo, ND  58102-4932
       (701) 297-7400
       dawn.deitz@usdoj.gov
       Attorney for United States